ALDEN F. ABBOTT
General Counsel
COLIN HECTOR (CA Bar No. 281795)
NIKHIL SINGHVI (DC Bar No.496357)
Email: chector@ftc.gov; nsinghvi@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., NW, Mail Drop CC-10232
Washington, DC 20580
Telephone: (202) 326-3376 (Hector)
Facsimile: (202) 326-3768

Attorneys for Plaintiff
Federal Trade Commission

## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><div align="center">Plaintiff,</div><br><div align="center">v.</div><br>TATE'S AUTO CENTER OF WINSLOW, INC., an Arizona Corporation;<br><br>TATES AUTOMOTIVE, INC., an Arizona Corporation;<br><br>TATE FORD-LINCOLN-MERCURY, INC., d/b/a Tate's Auto Center, a Delaware corporation;<br><br>TATE'S AUTO CENTER OF GALLUP, INC., a New Mexico Corporation;<br><br>Richard Berry, individually and as an officer of Tate's Auto Center of Winslow, Inc., Tates Automotive, Inc., Tate Ford-Lincoln-Mercury, Inc., and Tate's Auto Center of Gallup, Inc.;<br><br><div align="center">Defendants, and</div><br>Linda Tate,<br><div align="center">Relief Defendant.</div> | Case no.<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC") for its Complaint alleges:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b); the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j, and its implementing Regulation Z, 12 C.F.R. Part 226;  and the Consumer Leasing Act ("CLA"), 15 U.S.C. §§ 1667-1667f and its implementing Regulation M, 12 C.F.R. Part 213.  Under these authorities, the FTC seeks preliminary and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, TILA and its implementing Regulation Z, and CLA and its implementing Regulation M.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      Plaintiff FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section

2

5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces TILA, 15 U.S.C. §§ 1601-1666j, which establishes, *inter alia*, disclosure and calculation requirements for consumer credit transactions and advertisements, and CLA, 15 U.S.C. §§ 1667-1667f, which establishes, *inter alia*, disclosure and calculation requirements for consumer lease transactions and advertisements.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, TILA, and CLA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b) and 1607(c).

## DEFENDANTS

6.     TATE'S AUTO CENTER OF WINSLOW, INC., is an Arizona corporation, with a principal place of business at 2400 East Route 66, Winslow, AZ 86047.  Tate's Auto Center of Winslow transacts or has transacted business in this district.  At all times material to this Complaint, acting alone or in concert with others, Tate's Auto Center of Winslow has advertised, marketed, distributed, or offered vehicles to consumers for sale or lease.

7.     TATES AUTOMOTIVE, INC., also d/b/a Tate's Nissan Pontiac GMC Buick, is an Arizona corporation, that has conducted business at locations

including 411 E. Deuce of Clubs, Show Low, AZ 85901.  Tates Automotive

transacts or has transacted business in this district.  At all times material to this

Complaint, acting alone or in concert with others, Tates Automotive has

advertised, marketed, distributed, or offered vehicles to consumers for sale or

lease.

8.     TATE FORD-LINCOLN-MERCURY, INC., also d/b/a Tate's Auto

Center, is a Delaware corporation, with a principal place of business at 1001

Navajo Blvd, Holbrook AZ 86025.  Tate Ford-Lincoln-Mercury transacts or has

transacted business in this district.  At all times material to this Complaint, acting

alone or in concert with others, Tate Ford-Lincoln-Mercury has advertised,

marketed, distributed, or offered vehicles to consumers for sale or lease.

9.     TATE'S AUTO CENTER OF GALLUP, INC., is a New Mexico

corporation, with a principal place of business at 1200 West Jefferson Ave.,

Gallup, NM 87301.  Tate's Auto Center of Gallup transacts or has transacted

business in this district.  At all times material to this Complaint, acting alone or in

concert with others, Tate's Auto Center of Gallup has advertised, marketed,

distributed, or offered vehicles to consumers for sale or lease.

10.     Defendant Richard Berry ("Berry") has held himself out as the

Secretary and Treasurer of each of the Corporate Defendants.  Berry has also held

himself out as the Owner and Corporate General Manager of Tate's Auto Group, a

4

business name that refers collectively to the Corporate Defendants.  Berry has participated in the day-to-day operation of each Corporate Defendant, including entering into service contracts and responding to inquiries from government agencies.  At all times material to this Complaint, acting alone or in concert with others, Berry has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Tate's Auto Center of Winslow, Inc., Tates Automotive, Inc., Tate Ford-Lincoln-Mercury, Inc., and Tate's Auto Center of Gallup, Inc., including the acts and practices set forth in this Complaint. Defendant Berry resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

11.     Relief Defendant Linda Tate is an individual who has received hundreds of thousands of dollars from Defendants.  Tate has received funds that can be traced directly to Defendants' unlawful acts or pactices alleged below, and she has no legitimate claim to those funds.

## COMMON ENTERPRISE

12.     Tate's Auto Center of Winslow, Tate's Automotive, Tate Ford-Lincoln-Mercury, and Tate's Auto Center of Gallup (collectively "Tate's Auto" or "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive, unfair, and unlawful acts and practices alleged below.  Corporate

Defendants have conducted the business practices described below through interrelated companies that have common ownership, officers, managers, business functions, employees, and office locations.  Because Tate's Auto has operated as a common enterprise, each of the Corporate Defendants is jointly and severally liable for the acts and practices alleged below.  Defendant Berry has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

13.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

14.     Tate's Auto is a collection of auto dealerships with locations in cities near the border of the Navajo Nation.  Many of its customers are citizens of the Navajo Nation, which includes parts of New Mexico, Arizona, and Utah.  Tate's Auto has a customer service center on the Navajo Nation Reservation in Window Rock, Arizona, and Tate's Auto frequently sponsors Navajo Nation events and runs radio and print ads in Navajo media sources, in an effort to attract customers.

15.     In numerous instances, Tate's Auto has engaged in unlawful practices related to the sale, lease, and financing of automobiles.  Specifically, Tate's Auto

has: (i) falsified consumers' income on vehicle financing applications; (ii) falsified consumers' down payment information on consumers' financing applications and contracts; and (iii) disseminated deceptive advertisements offering vehicles for sale, financing, and lease.

<div align="center">Background on Financing Process</div>

16.     Tate's Auto, like other dealers, frequently offers financing to consumers who wish to purchase a vehicle.  As part of this process, Tate's Auto extends financing terms, including the amount financed, term, and annual percentage rate (APR), to consumers as part of the vehicle purchase process.  The terms are contained in a retail installment sales contract ("RISC") and other finance documents that consumers execute, and Tate's Auto typically seeks to assign the RISC to a third party—such as a bank, finance company or credit union (collectively, "financing company").  If no financing company agrees to an assignment based on the terms of the financing package, the purchase may not be finalized.

17.     In attempting to assign a financing contract, Tate's Auto generally must submit a completed financing application and contract to the financing company.  The financing application requires a statement disclosing the consumer's monthly income and the down payment, and the financing contract requires a statement disclosing the consumer's down payment.  Financing

<div align="center">7</div>

companies use this information to determine whether to accept an assignment of the contract.

<u>Deception and Unfairness in the Financing Process</u>

*Falsification on Financing Applications*

18.     Since at least 2014, in numerous instances, Tate's Auto has falsified consumers' monthly income and down payments on financing applications and financing contracts.

19.     During the vehicle sales process, Tate's Auto representatives have told consumers that Tate's Auto will help them apply for and obtain financing for a vehicle purchase.  To do this, Tate's Auto representatives have told consumers they must provide personal information—including name, address, and monthly income—so that Tate's Auto can complete a financing application and sales contract for the consumer.  The representatives typically have obtained this information by asking consumers to provide it orally during in-person or telephone conversations, or by asking consumers to enter handwritten information on a form that Tate's Auto has provided.  Tate's Auto has represented that the requested information is necessary for the financing company to determine whether consumers qualify for vehicle financing.  After consumers have provided the requested information, Tate's Auto representatives have filled out financing applications and contracts for consumers.  Tate's Auto representatives have

instructed consumers to sign the documents, and have then presented these documents to financing companies for financing approval or contract assignment.

20.     In numerous instances, instead of using the information that consumers provided to complete the financial paperwork, Tate's Auto has used inflated numbers falsely representing that consumers have higher monthly incomes.

21.     In numerous instances, Tate's Auto representatives also have falsely inflated the amount of the consumer's cash down payment.

22.     Tate's Auto engages in a variety of practices that prevent consumers from reviewing the income and down payment information.  Tate's Auto representatives have often rushed consumers through the process of reviewing and signing these forms, preventing consumers from noticing inaccuracies.  In numerous instances, Tate's Auto's representatives fill out financing applications and contracts over the telephone or in public locations such as grocery store parking lots or restaurants, or do not give consumers the income and down payment portion of the contract to review before signing.  In numerous other instances, Tate's Auto employees have altered documents after they have been signed.  As a result of these practices, in many instances consumers have been unaware that their incomes or down payments were recorded incorrectly on financing applications and contracts.  Additionally, in some instances, consumers

have reported that they told Tate's Auto the information on an application was incorrect, and that although Tate's Auto assured them the information would be corrected, it was not.

23.    In some cases where consumers eventually noticed these inaccuracies after the transaction was complete, they have reported that Tate's Auto inflated their monthly incomes by hundreds or thousands of dollars per month.  For example, one consumer told Tate's Auto that she had a fixed monthly income of about $1,200.  Without her knowledge, however, a Tate's Auto representative inflated her income to $5,200 on the financing documents.  Other consumers have reported that Tate's Auto similarly inflated their incomes, including by submitting applications with income that was double or more the consumers' actual income.

24.    In some instances, consumers have noticed that Tate's Auto inflated their income on financing applications and have refused to go through with the transaction.

25.    Tate's Auto also has misrepresented the amount of consumers' down payments on financing applications and contracts.  In numerous instances, after a consumer has agreed to make a down payment of a specific amount or told a Tate's Auto representative that the consumer cannot put any money down, Tate's Auto has inflated the down payment amount in the consumer's paperwork.

26.     By falsifying consumers' income and the amount of out-of-pocket cash paid by consumers, Tate's Auto has inaccurately made consumers appear more creditworthy and has submitted false financing applications without consumers' knowledge.  In so doing, Tate's Auto has made it appear as though consumers provided the false information, thereby exposing consumers to risk of liability for submitting false information to financing companies, and associated costs.

27.     Consumers could not reasonably avoid the harm from their increased risk of liability, because they did not know Tate's Auto would falsify or had falsified the information on the credit applications Tate's Auto submitted to financing companies.

28.     Fraud reviews undertaken by third-party financing companies found high rates of falsified financing applications and contracts that were submitted by Tate's Auto.

29.     In December 2015, a major financing company to which Tate's Auto had been regularly assigning financing contracts, conducted fraud reviews of Tate's Auto.  During the fraud reviews, the financing company found that numerous financing agreements for Tate's Auto dealerships were based on applications with inflated income:

- Tate's Auto Center of Winslow – 44.83% of applications listed inflated income

- Tate's Automotive d/b/a Tate's Nissan Buick GMC – 38.71% of applications listed inflated income

- Tate's Auto Center – 37.50% of applications listed inflated income

- Tate's Auto Center of Gallup – 17.9% of applications listed inflated income

30.     In numerous instances, the fraud reviews found that applications from Tate's Auto contained monthly incomes that were inflated more than $2,000, and often more than double what the consumer actually made.  In many cases, the financing company verified that the income was falsified with consumers who explained that the income information they had provided to Tate's Auto was not accurately reflected in the application.  For example, one consumer reported his monthly income as $1,000 to Tate's Auto, but the application contained a stated income of $4,896.  Another consumer who was unemployed when she applied for financing—earning $100 to $200 from jewelry sales—reported that her application falsely claimed she had a monthly income of $3,889 from a business she did not work for.  In yet another example, a consumer who was retired and lived on a fixed income reported that the application submitted by Tate's Auto inflated her earnings by more than $1,000 a month.

31.     Tate's Auto's falsification of information on credit applications resulted in financing companies accepting assignment of credit to consumers for

which they did not qualify and on which they defaulted at a higher rate than properly qualified consumers.

32.     The financing company ceased doing business with Tate's Auto in January 2016 after experiencing substantial losses due to higher than average rates of default and repossession.  At that time, it terminated its agreement to accept assignment of credit from Tate's Auto, after it incurred "staggering" losses on credit originated by Tate's Auto, ultimately restricting access to credit for many other consumers.

33.     Another financing company to which Tate's Auto regularly assigned financing also discovered in its audits that Tate's Auto had inflated consumers' incomes in many instances.  In numerous instances, consumers themselves also reported that Tate's Auto submitted falsified applications that inflated their monthly income by hundreds or thousands of dollars.

34.     Consistent with the fraud reviews, a 2014 Report by the Navajo Nation Human Rights Commission  ("NNHRC") entitled "Assessing Abuse of Navajo Consumers When Purchasing Vehicles in Border Towns" reported that the NNHRC received more complaints about Tate's Auto than any other dealership.

35.     Consumers in the market could not reasonably avoid the harm from decreased access to credit, as discussed in Paragraph 32, because they were not parties to the transactions where Tate's falsified information.

36.     The harm caused by Tate's Auto's falsification of information on credit applications submitted to financing companies outweighed the benefits, if any, of this practice for consumers and competition.

<div align="center">Deceptive Advertisements</div>

37.     Tate's Auto has offered motor vehicles for sale or lease in numerous television, radio, online, and print advertisements.  But in many instances, Tate's Auto has misrepresented the nature of the offer or terms of financing or leasing.

<div align="center">*Deceptive Monthly Payment Offer*</div>

38.     Tate's Auto has disseminated advertisements deceptively touting low payment amounts.  For example, Tate's Auto posted a video advertisement on the website YouTube.com that included the following screenshot offering a particular vehicle for "$169 a month."  The video was accompanied by a voice-over stating ". . . and now the Chrysler 200 can be in your driveway for only one sixty-nine per month."



While this video image is on screen, the prominent text stating "$169/MO" changes to "PURCHASE OR LEASE A 2015 CHRYSLER," as follows.  The video image is accompanied by a voice-over stating that if consumers "purchase or lease a new 2015 Chrysler 200" they will receive a new iPhone 6.



39.     In fact, consumers cannot purchase the vehicle for the advertised $169 per month.  This amount only applies to leases.

40.     Additionally, although the advertisement touts a low monthly payment amount, it does not clearly or conspicuously disclose that consumers must pay thousands of dollars in up-front payments to obtain the advertised monthly payment amount, and the number of scheduled payments.  At the bottom of the screen, small white text displayed against a gray background states that consumers must also pay "$2899 due" at the lease signing, as well as the first month's payment, tax, title, license and "doc" fees, and that 24 monthly payments are required.  Additionally, the offer is only available with an unspecified "dealer contribution" that is not explained.

16

*Hidden Limitations on Discounts*

41.    In numerous instances, Tate's Auto has advertised vehicles for sale

with specific discounts or "Incentive[s]" that purportedly reduce the

manufacturer's suggested retail price ("MSRP").  To obtain these discounts or

incentives, however, consumers must meet certain conditions, which Tate's Auto

does not disclose adequately.  For example, Tate's Auto advertised a vehicle on its

website with an "Incentive" discount of $5,250 from the MSRP, as follows.



42.    The face of the advertisement does not disclose that substantial

conditions apply to consumers' qualification for this $5,250 "Incentive."

Specifically, the "Incentive" discount is only available for consumers who trade in

a 1995 or newer vehicle or terminate a non-Ford/Lincoln/Mercury lease 30 days

prior to or 90 days after delivery.  To learn of this restriction, a consumer would

17

have to first click on a link at the bottom of the advertisement that makes no reference to an "Incentive" or $5,250, and that is not otherwise clearly related to the claim.  The link instead reads, "Manufacturer Offers[10]: $750 and 0.0% on select Ford Models, 'Special' Ford Credit Retail Trade-In Assisance."  If a consumer clicks on the second half of the link – the portion of text that reads "'Special' Ford Credit Retail Trade-In Assistance," the consumer is sent to a pop-up box, allowing the consumer to "Request More Info" about "'Special' Ford Credit Retail Trade-In Assistance," as depicted below.  However,  this pop-up box does not initially disclose the terms of the $5,250 "Incentive."  Only if the consumer next clicks on the link labeled "*Disclaimer(s)" does text expand, as depicted below, to reveal that the "Incentive" discount is only available for consumers who trade in a 1995 or newer vehicle or terminate a non-Ford/Lincoln/Mercury lease 30 days prior to or 90 days after delivery.



43.     Footnote 10, which appears on the first screen after the link for

"Manufacturer Offers" and on the second screen after the text stating

"Manufacturer Offer," contains general language stating that offers and incentives

may not be available to all customers, and that to redeem an offer or incentive, a

customer must purchase a vehicle by the stated expiration date.  But it does not

provide any information about incentives being limited to customers who trade-in a

vehicle, terminate a lease, or fulfill a similar condition.

*Undisclosed Financing Terms*

44.     In many instances, Tate's Auto has also distributed hardcopy flyers,

such as the typical and illustrative example below, that prominently advertise

vehicle offers with "$0 down" without disclosing any other required terms:



# TATE'S AUTO GROUP

## Winslow, Az

★ Free Tires 4 Life with Purchase of Brand New Vehicle

★ $0 Down, on OAC

★ First Time Buyers Program

★ All Makes & Models

★ Bang for Your Buck on Trade-ins

★ New And Used Vehicles

As the number one sales team in Northern Arizona, please give us a call ☺



Jason Yazzie
Sales
jason.yazzie@salesukicarlot.com

2400 E Route 66
Winslow, AZ  86047
928.289.4081 Office
928.206.1427 Cell
928.289.2507 Fax

TATE'S
AUTO GROUP
ARIZONA · NEW MEXICO
www.shoptates.com

45.     Tate's Auto also has published posts on its Facebook page and on publicly available Facebook group pages, such as the typical and illustrative examples below, that advertise vehicle offers with a stated monthly payment or low or zero down payment without disclosing certain other required terms:



**Tate's Auto Group** added 4 new photos.
August 26 at 12:52pm · 🌐

JUST ANNOUNCED!!!!!

Brand New 2017 Nissan Titan Crew Cab

$259 per mo plus tax
$1,000 down payment
Or
$299 per mo plus tax
Zero Down Payment
www.shoptates.com
928.537.4201



**Scarlett James**
January 3

**BRAND NEW & PRE-OWNED VEHICLES!** 💕
$84,684,464,634,881
📍 Winslow, AZ (86047)

☎️⚙️❤️NO MONEY DOWN ON ALL APPROVALS FOR ALL BRAND NEW VEHICLES☎️⚙️ TIRES FOR LIFE!!⚙️❤️☎️ FREE DELIVERY SERVICE! 😊😊❤️Apply with me Scarlett James Sales Rep w/ Tates Auto Group of Winslow AZ.⚙️😊😊❤️ Over the phone applications are accepted .928-206-9166❤️😊⚙️



**Scarlett James**
December 27, 2016

**Brand New & Pre-Owned Vehicles! 2016 & 2017's All ABSOLUTELY NO MONEY DOWN AT ALL On Approved Credit**
$686,683,838
📍 Tuba City, AZ (86045)

Come down to Tates In Winslow to take a look at our New 2017 Arrivals. We have Cars, Trucks & Suvs! We work woth Dodge , Chrysler, Jeep, Buick , Lincoln, GMCS, Nissan and Ford! Tates also offer or Free Tires for Life & Free Delivery! So call me at 928-206-9166 to apply over rhe pjone or just to have questions answers. Again I'm Scarlett Jay. With Tates in Winslow. Hope to see you soon.



Corwin Bahe ▸ Navajo Nation Online Yard Sale
December 15, 2016 · 🌐

**APPLY TODAY!!!! WINSLOW TATE'S AUTO CENTER!!!! ZERO DOWN!!!!**
**CALL ME OR TEXT ME AT (928)797-3044**

$492,388,976

📍 Winslow, AZ (86047)

STILL TAKING APPLICATIONS AND IF YOU RECEIVED A LETTER IN THE
MAIL WITH CAPITAL ONE BANK ON IT GIVE ME A CALL....
(928)797-3044...

46.     These vehicle offers for low or no down payment transactions fail to

disclose required terms that are necessary for consumers to understand key terms

of the advertised offer.

## **VIOLATIONS OF THE FTC ACT**

47.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or

deceptive acts or practices in or affecting commerce."

48.     Misrepresentations or deceptive omissions of material fact constitute

deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

49.     Acts or practices are unfair under Section 5 of the FTC Act if they

cause substantial injury to consumers that consumers cannot reasonably avoid

themselves and that is not outweighed by countervailing benefits to consumers or

competition.  15 U.S.C. § 45(n).

22

## Count I

### Deceptive Falsification of Income or Down Payment
### on Consumers' Financing Documents

50.     In numerous instances, in connection with the advertising, marketing, promotion, offering of financing, financing, offering for sale, or sale, of motor vehicles, Defendants have represented, directly or indirectly, expressly or by implication, that they would submit to financing companies the income information and down payment amount provided by consumers.

51.     In fact, in numerous instances, through the means described in Paragraphs 19-22 of this Complaint, Defendants have not submitted to financing companies the income information and down payment amount provided by consumers.

52.     Therefore, Defendants' representations as set forth in Paragraph 50 of this Complaint are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C., 15 U.S.C. § 45(a).

## Count II

### Unfair Falsification of Income Information or Down Payment
### on Consumers' Financing Documents

53.     In numerous instances, Defendants have falsified consumer income or down payment information on financing applications they submitted for consumers to financing companies.

23

54.    Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

55.    Therefore, Defendants' practices as described in Paragraph 53 above constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and (n).

## Count III

### Misrepresentations Regarding Advertised Transaction

56.    In numerous instances, through the means described in Paragraphs 38 to 39, Defendants have represented, directly or indirectly, expressly or by implication, that consumers could finance the purchase of a 2015 Chrysler vehicle for monthly payments of $169.

57.    In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 56 of this Complaint, consumers could not finance the purchase of the advertised vehicle for $169 a month. The prominently advertised monthly payment terms are components of lease offers and not credit offers.

58.    Therefore, the making of the representations as set forth in Paragraph 56 of this Complaint constitutes a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count IV

### Failure to Disclosure Material Aspects of Offers

59.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of a motor vehicle, Defendants have represented, directly or indirectly, expressly or by implication, that particular motor vehicles are available at a prominently advertised price or with a prominently advertised incentive or discount.

60.    In numerous instances in which Defendants have made a representation set forth in Paragraph 59 of this Complaint, Defendants have failed to disclose adequately to consumers material conditions, limitations, and restrictions, including the need to trade-in a vehicle or terminate a lease.

61.    Defendants' failure to disclose adequately the material information described in Paragraph 60, above, in light of the representation described in Paragraph 59, above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TRUTH IN LENDING ACT AND REGULATION Z

62.    Under Section 144 of the TILA and Section 226.24(d) of Regulation Z, as amended, advertisements promoting closed-end credit in consumer credit transactions are required to make certain disclosures ("TILA additional terms") if

they state any of several terms, including the amount or percentage of any down payment ("TILA triggering terms").

63.    Defendants' advertisements promote closed-end credit, and Defendants are subject to the requirements of the TILA and Regulation Z.

## Count V

### Failure to Disclose or Disclose Clearly and Conspicuously Required Credit Information

64.    In numerous instances, Defendants' advertisements promoting closed-end credit have failed to disclose, or failed to disclose clearly and conspicuously, TILA additional terms required by the TILA and Regulation Z, including one or more of the following:

   (a)    The terms of repayment, which reflect the repayment obligations over the full term of the loan, including any balloon payment; and

   (b)    The "annual percentage rate," using that term, and, if the rate may be increased after consummation, that fact.

65.    Therefore, the practices as set forth in Paragraph 64 of this Complaint have violated Section 144 of the TILA, 15 U.S.C. § 1664, and Section 226.24(d) of Regulation Z, 12 C.F.R. § 226.24(d), as amended.

## VIOLATIONS OF THE CONSUMER LEASING ACT & REGULATION M

66.     Under Section 184 of the CLA and Section 213.7 of Regulation M, advertisements promoting consumer leases are required to make certain disclosures ("CLA additional terms") if they state any of several terms, such as the amount of any payment ("CLA triggering terms").  15 U.S.C. § 1667c; 12 C.F.R. § 213.7.

67.     Defendants' advertisements promoting consumer leases are subject to the requirements of the CLA and Regulation M.

## Count VI

### Failure to Disclose or to Disclose Clearly and Conspicuously Required Lease Information

68.     In numerous instances, Defendants' advertisements promoting consumer leases have included CLA triggering terms, but have failed to disclose or to disclose clearly and conspicuously CLA additional terms required by the CLA and Regulation M, including one or more of the following:

(a)     That the transaction advertised is a lease;

(b)     The total amount due prior to or at consummation or by delivery, if delivery occurs after consummation;

(c)     Whether or not a security deposit is required;

(d)     The number, amount, and timing of scheduled payments; and

(e)     With respect to a lease in which the liability of the consumer at the end of the lease term is based on the anticipated residual value of the

property, that an extra charge may be imposed at the end of the lease term.

69.     Therefore, the practices as set forth in Paragraph 68 of this Complaint have violated Section 184 of the CLA, 15 U.S.C. § 1667c, and Section 213.7 of Regulation M, 12 C.F.R. § 213.7.

## Count VII

### Relief Defendant

70.     Relief Defendant Linda Tate has received, directly or indirectly, funds or other assets from Defendants that are traceable to funds obtained from Defendants' customers through the deceptive acts or practices described herein.

71.     Relief Defendant Linda Tate is not a bona fide purchaser with legal and equitable title to Defendants' customer's funds or other assets, and she will be unjustly enriched if she is not required to disgorge the funds or the value of the benefit she received as a result of Defendants' deceptive or unfair acts or practices.

72.     By reason of the foregoing, Relief Defendant Tate holds funds and assets in constructive trust for the benefit of Defendants' customers.

### CONSUMER INJURY

73.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, TILA, Regulation Z, the CLA, and Regulation M.  In addition, Defendants have been unjustly enriched as a

28

result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

74.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Federal Trade Commission, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), TILA and its implementing Regulation Z, 12 C.F.R. Part 226, CLA and its implementing Regulation M, 12 C.F.R. Part 213, and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including but not limited to a temporary and preliminary injunction;

B.      Enter a permanent injunction to prevent future violations of the FTC Act, TILA, Regulation Z, the CLA, and Regulation M by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, TILA, Regulation Z, the CLA, and Regulation M, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.      Enter an order requiring Relief Defendant to disgorge all funds and assets, or the value of the benefit it received from the funds and assets, which are traceable to Defendants' deceptive acts or practices; and

E.      Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: July 31, 2018                          Respectfully submitted,


ALDEN F. ABBOTT
General Counsel


/s/  Colin Hector
COLIN HECTOR
NIKHIL SINGHVI
Email: chector@ftc.gov; nsinghvi@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., NW
Mail Drop CC-10232

Washington, DC 20580
Telephone: (202) 326-3376 (Hector)
Facsimile: (202) 326-3768

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION