NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-18-08176-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Tate's Auto Center of Winslow Incorporation, et al., | |
| Defendants. | |

Before the Court is the Federal Trade Commission's ("FTC") Motion to Compel, which the Court will construe as the requested supplemental briefing. (Doc. 44). Defendants filed a Response (Doc. 45) and the Court did not permit the FTC to file a Reply. (Doc. 43).

## I. BACKGROUND

On July 31, 2018, the FTC filed this action alleging that Tate's Auto Center of Winslow, Inc., Tate's Automotive, Inc. Tate Ford-Lincoln-Mercury, Inc., Tate's Auto Center of Gallup, Inc. (collectively "Auto Dealership Defendants"), falsified financial information on financing applications created as part of the sale of automobiles to consumers; misrepresented the nature of an advertised transactions; failed to adequately disclose conditions or limitations on advertised offers; and failed to disclose required information when promoting credit or lease financing terms. (*Id.* at 23-28). Additionally, the FTC alleges Defendant Richard Berry is liable for all acts or practices of the Auto Dealership Defendants. (*Id.* at 4). The FTC also alleges that Defendant Linda Tate, a relief

defendant, has received, directly or indirectly, funds or other assets from the Auto Dealership Defendants that are traceable to funds obtained from customers through the alleged misconduct, and that Ms. Tate has no legitimate claim to those funds. (*Id.* at 28).

The FTC served Defendants with requests for production on November 13, 2018. Request for Production No. 1 requested: "[t]he complete customer file[1] for every customer who purchased a vehicle with financing." (Doc. 44 at 8). Prior to the December 13, 2018 production deadline, the parties conferred at least twice regarding the requested records. (Doc. 49 at 3). In those conferrals, Defendants stated that they objected to Request for Production No. 1 because the records requested were irrelevant and not proportional to the litigation, and Defendants stated, "that burden would likely be an issue as well." (*Id.*)

On December 31, 2013, the FTC filed a Motion to Stay the Case due to the government shutdown. (Doc. 34). The Court granted the Motion and ordered that the stay automatically lift upon restoration of funding to the FTC. (Doc. 35). Funding to the FTC was restored and the FTC resumed normal activities on January 28, 2019; therefore, the stay was automatically lifted. (Doc. 38). On February 4, 2019, Defendants served the following objection to the FTC's Request for Production No. 1:

> Objection: Relevance, Proportionality and Burden. See Fed.R. Civ.P. 26(b)(l). Defendants estimate that the scope of this request encompasses more than one million pages and over 10,000 deal jackets between January 1, 2013 and December 31, 2018. This constitutes an unreasonable fishing expedition through gigantic proprietary data bases in hopes of finding more than the 29 customer deals identified in Plaintiffs complaint. Defendants' deal jackets are not retained in an electronic form that can be transferred in bulk to another digital format or platform. This request will require individual searches for and copying of each deal jacket files and such a task would present a tremendous burden on Defendants' staff. Such a burden is far out of proportion to the minimal factual support cited by Plaintiff in its complaint and MIDP.

(*Id.*)

On February 13, 2019, the parties filed a Joint Summary of a Discovery Dispute,

---

[1] The customer file is also known as a "deal jacket," which typically includes a "financing application, financing agreement, purchase agreement, consumer identification information, and, in some cases, consumer wage slips." (Doc. 44 at 3).

which primarily concerned the FTC's Request for Production No. 1. (Doc. 41). The Court held a telephonic Discovery Dispute Hearing on February 14, 2019, and Ordered the FTC to file supplemental briefing of no more than five (5) pages concerning the discovery dispute and provided that Defendants could file a response to that briefing. (Doc. 43).

## II. DISCUSSION

In its supplemental briefing, the FTC argues that because Defendants failed to formally serve its objections to the requests for production by the deadline, they have waived all objections to the requests. (Doc. 44 at 2). The FTC further argues that the request is proportional and relevant. (*Id.* at 2-4). Defendants argue that although they did not serve objections by the production deadline, they conferred with the FTC regarding their objections on two occasions before the production deadline. (Doc. 49 at 4). Moreover, Defendants argue that production of all the deal jackets for financed transactions between July 31, 2013, and July 31, 2018, is unduly burdensome and not proportional to the litigation. (*Id.*) Defendants further provide that they are amenable to producing a statistical sample of the deal jackets, but the parties have been unable to agree on a method of determining an appropriate statistical sample. (*Id.* at 4-5).

### A. Defendants' Untimely Objection

Under the Federal Rules of Civil Procedure ("Rule") 34, a party must respond to requests for production within 30 days. "[A] failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). However, while Rule 34 does not expressly provide for relief from waiver, courts generally grant such relief upon a showing of good cause. *See Karr v. Napolitano*, 2012 WL 1965855, at *5 (N.D. Cal. May 31, 2012). Courts retain a fair amount of discretion when determining whether good cause exists for excusing a late objection. *Id.* In exercising its discretion, courts evaluate relevant factors, which often include: (1) the length of the delay; (2) the reason for the delay; (3) the existence of bad faith; (4) the prejudice to the party seeking the disclosure; (5) the nature of the request; and (6) the harshness of imposing the waiver. *See Batts v. County of Santa*

*Clara*, 2010 WL 1027990, at *1 (N.D. Cal. Mar. 18, 2010).

Here, the record reflects that the FTC was aware that Defendants objected to the request for production prior to the deadline, and while the written objection was served approximately seven weeks late, the case was stayed for nearly three weeks during that time. Additionally, the FTC does not argue that the delay was prejudicial or that Defendants acted in bad faith. (Doc. 44 at 2-3). Moreover, the harshness of imposing a waiver would be significant to Defendants. Therefore, the Court finds good cause to excuse Defendants' late objections to Request for Production No. 1. *See Batts*, 2010 WL 1027990, at *1 ("[T]his court finds that a waiver of all objections would be a draconian result that is not warranted under the circumstances presented here."). Accordingly, the Court will address the merits of the FTC's supplemental briefing.

**B.    FTC's Request for Production No. 1**

The FTC requests all deal jackets[2] for all financed transactions between July 31, 2013, and July 31, 2018.[3] Defendants object to the request on the basis of relevance, proportionality, and burden. (Doc. 49 at 3). Specifically, Defendants argue that the FTC's request "amounts to approximately 17,000 files . . . which must be individually searched, copied and reproduced, in one fashion or another, by [D]efendants." (*Id.* at 2). Defendants further provide that Defendants' "deal jackets are scanned and filed electronically on a data base platform that is unique to [Defendants]. Each deal jacket has its own separate file. This data base cannot be transferred or exported to any other data base platform." (*Id.*)

Relevance for purposes of discovery is defined broadly; "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to

---

[2] The Court notes that there appears to be a discrepancy regarding how many deal jackets Defendants have produced to the FTC so far. In Defendants' Response, they first stated that 108 deal jackets have been produced so far, but subsequently provided that 181 deal jackets have been produced. (Doc. 49 at 2, 5). Additionally, the FTC represents that Defendants have only provided 73 deal jackets. (Doc. 44 at 5). Thus, the Court cannot determine from the record the amount of deal jackets that have been actually produced so far.

[3] Initially, the FTC's Request for Production No. 1 did not contain any temporal limitations; however, the FTC later provided that it is seeking records from July 31, 2013, through July 31, 2018. (Doc. 44 at 3 n.2). Thus, that is the time frame the Court will use in analyzing the request.

the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In turn, if the requested discovery is relevant for purposes of discovery, the party opposing discovery has the burden to demonstrate that discovery should not be allowed due to burden or cost and must explain and support its objections with competent evidence. *Lind v. United States*, 2014 WL 2930486, at *3 (D. Ariz. June 30, 2014). The court must limit the requested discovery if it is shown to be "unreasonably cumulative or duplicative"; if "the party seeking the discovery has had ample opportunity to obtain the information"; or if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

Here, the Court finds that the deal jackets are relevant to the FTC's claims; however, the Court acknowledges the burden of producing the five years of requested deal jackets. Defendants provide that all the deal jackets are stored electronically; however, Defendants state that the electronic deal jackets "cannot be transferred or exported" to another platform in their current electronic without the creation of a new software program by Defendants' database provider. (Doc. 49 at 2). But Defendants do not specify what format or file type the electronic deal jackets are in. (*Id.*) Defendants provide that there are approximately 17,000 transactions that were financed for the relevant time period, and that each deal jacket contains approximately 40-60 pages.[4] (Doc. 49-1). Thus, if the deal jackets must be printed to be produced then Defendants would have to print between 680,000-1,020,000 pages, which the Court finds would be unduly burdensome on Defendants. However, it is unclear if the parties have conferred regarding whether or not the FTC is capable of receiving the electronic deal jackets in their current file type or format. Thus, without knowing if the deal jackets could be produced in their electronic form, the Court cannot determine whether the production of the records is unduly burdensome on Defendants.

Additionally, the parties have previously discussed Defendants producing a

---

[4] The FTC provides that each deal jacket that have been produced so far contains only approximately 37 pages. (Doc. 44 at 5).

- 5 -

statistical sample of the deal jackets for the relevant time period. (Doc. 49 at 4). In fact, the FTC has stated that if Defendants provided a list of all financed transactions between July 31, 2013, and July 31, 2018, including the transaction date, dealership location, and lender name for each transaction, then it would be able to determine an appropriate statistical sample. (Doc. 44-1 at 29). Defendants have not provided any information that indicates that the production of such a list of transactions would be unduly burdensome and Defendants have indicated that the deal jacket database is, to some extent, searchable. (Doc. 49-1 at 2-3). While Defendants do appear to amenable to producing some of the requested deal jackets, they have not provided a viable compromise regarding the number of deal jackets they are willing to produce nor have they provided a viable means for the production of those deal jackets.

In light of the above, by March 15, 2019, Defendants must provide the file type or format of the electronic deal jacket files so that the FTC can determine whether it has the capability to receive the deal jackets electronically. Additionally, Defendants must provide a list by March 26, 2019, of all financed transactions between July 31, 2013, and July 31, 2018, which includes the transaction date, dealership location, and lender name for each transaction. If, after the financed transaction list is produced, the parties are still unable to determine an appropriate sample size the parties may submit a joint notice of discovery dispute in compliance with the discovery dispute process outlined in the Court's Rule 16 Scheduling Order. (Doc. 24 at 4).

Accordingly,

**IT IS ORDERED** that FTC's Motion to Compel (Doc. 44), which the Court construed as the requested supplemental briefing, is **DENIED**;

**IT IS FURTHER ORDERED** that on or before <u>March 15, 2019</u>, Defendants must provide the FTC with the file type or format of the electronic deal jacket files; and

…

…

…

1    **IT IS FINALLY ORDERED** that on or before <u>March 26, 2019</u>, Defendants must

2    provide the FTC with a searchable list of all financed transactions between July 31, 2013,

3    and July 31, 2018, which includes the transaction date, dealership location, and lender

4    name for each transaction.

5         Dated this 12th day of March, 2019.

6

7

8    Honorable Diane J. Humetewa
     United States District Judge

9